AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| LeBrandon WATSON | ) | Case No.  2:23-mj-524 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __09/13/2023__ in the county of __Morrow__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC Section 841(a)(1) x2 | Possession with Intent to Distibute a Detectable Amount of Methamphetamine |
| | Possession with Intent to Distibute a Detectable Amount of Fentanyl |

This criminal complaint is based on these facts:

See attached affidavit, which is incorporated by reference.

☑ Continued on the attached sheet.

*Complainant's signature*

William VonEssen Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/20/2023

*Judge's signature*

City and state: Columbus, Ohio    Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, William Jake VonEssen, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since January of 2022. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I am empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of 21 U.S.C. § 878. I hold a Bachelor's Degree in Aerospace from Middle Tennessee State University. I have undergone the following training:

   a. I have completed the DEA Basic Agent Training Academy, which is a 17-week course in Quantico, VA that includes (but is not limited to) training in the following areas: surveillance, undercover operations, report writing, confidential source management, drug identification, legal principles, search warrant operations, case initiation and development, interview and interrogation, defensive tactics, physical training, and firearms proficiency. I continue to receive training on a daily basis by conducting criminal drug investigations and drawing from the expertise of agents more experienced than myself.

   b. Additionally, as a DEA Special Agent, my experience includes participating in criminal arrests, conducting physical surveillance, trash seizures, searching for

        evidence during court-authorized search warrants, and authoring search warrants as well as subpoenas.

      c. I have completed the DEA's Money Laundering Seminar, which is a three-day course in Quantico, VA that included training in the following areas: common money laundering schemes, money laundering techniques, the relationship between drug trafficking and terrorism financing, Chinese money laundering, utilization of the Financial Crimes Enforcement Network (FINCEN), specific money laundering violations (structuring, bulk cash smuggling, avoiding reporting requirements, international money laundering, etc.), virtual currency money laundering, and asset identification/tracing.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

3. On September 13, 2023, at approximately 3:00 a.m., investigators with the DEA Columbus District Office (CDO) were called to the Ohio State Highway Patrol (OSHP) Mount Gilead Post in Mount Gilead, OH. Troopers informed investigators that at approximately 1:15 a.m., on the same day, had conducted a traffic stop on a white 2013 Buick Enclave bearing Ohio license plate JLT2444 being driven by LaBrandon WATSON, with passenger Rosetta COBB on Interstate 71 Northbound near mile post 150 in Morrow County for a traffic infraction. During the traffic stop, Troopers observed the scent of marijuana, and as a result, detained both occupants, then conducted a probable cause search of the Buick. WATSON and COBB were

secured in the Troopers marked cruiser. Troopers located approximately five gross kilograms of suspected methamphetamine, approximately seventy gross grams of suspected fentanyl, and a total of three cellular telephones were recovered from the traffic stop. Both the suspected methamphetamine and fentanyl were located on the floor of the Buick behind the passenger seat contained in a plastic bag. After the search of the Buick, one of the Troopers read WATSON his Miranda rights, who afterwards admitted that he was responsible for the drugs found in the Buick and had picked them up from a man in Columbus.

4. Troopers conducted a review of the marked cruiser's audio and video recording during the search of the Buick, which WATSON and COBB were detained in. The following is a transcript of WATSON and COBB's conversation that began at around 1:27 a.m. per the OSHP Trooper executing the traffic stop:

> WATSON: *Taps leg of COBB* "We should've ran. We should've ran. We should've fucking ran…I said we should have ran." *Points toward vehicle* "He checking it. It's over with for me man."
>
> COBB: "What?"
>
> WATSON: "It's over with for me."
>
> COBB: "I'm on fucking federal paper. I can't even be around this."
>
> WATSON: "It's over with for me. It's fucking over. We should have ran baby."
>
> WATSON: *Watching the search* "Ohh he got it out. He got it out man!" *Punches own leg* "It's over. He got it out!"
>
> COBB: "What?"
>
> WATSON: "The ice."
>
> COBB: "What?"

WATSON: "Ice."

COBB: "You talking about weed?"

WATSON: *Pulls COBB's head close and whispers* "Ice…It's over! It's over! It's over! Man…I should've ran. I should've fucking ran. I ain't never gonna see my kids… It's over for me man. I should've ran…I ain't gonna lie, baby, if they let me out this car I'm gone."

COBB: *Shakes head* "Uh uh."

WATSON: "We gotta go."

COBB: "No."

WATSON: "Baby if we get away, I promise you we cool. We cool."

COBB: "No. I'm not."

WATSON: "It's over. So fuck it huh?"

COBB: "I'm not saying that. But I'm not."

WATSON: "Baby it's over with for me. It's over with for me. I ain't never finna see daylight again… I shouldn't even have listened to you. I should've gave it a run…*(inaudible mumbling)*…I could have took the fleeing."

COBB: "I didn't tell you to pull over. You pulled over."

WATSON: *Laughing* "You right though baby. You right…You right…You got your phone on you? It's over with! It's over with." *Hits own face* "Oh my God! Take my hand. I need you right now baby."

COBB: *Looking away* "I just don't have no time to go to jail."

WATSON: "It's over with. I should've. What was I thinking!"

COBB: "If they ask me. I didn't know. Cause I didn't know. Shit I don't know. U don't even know what the fuck was in there."

WATSON: "I should've ran. I should've ran baby. I'm sorry. I ain't nothing on you... I ain't gonna lie baby. I'm gone. I'm trying to run baby."

COBB: "No. Huh uh"

WATSON: "I got to...What's gonna happen to me? What the fuck? Let's go."

COBB: "No. Because then they gonna try to pin some shit on me."

WATSON: "It's gonna be on me regardless. I promise."

5. Based on my training and experience, I know that 'ice' is slang for crystallized methamphetamine. Upon observation of one of the bundles of suspected methamphetamine that was seized from the vehicle, the chunks of crystal appeared to share a resemblance to other quantities of crystal methamphetamine investigators have observed. A field test of one of the pieces of crystal in one of the bundles tested positive for methamphetamine. A field test of the white powdery substance that was contained in the small bundle of white powder tested positive for fentanyl.

6. At approximately 3:15 a.m., investigators with the CDO gave WATSON his Miranda warning, and after WATSON asked some questions about them that were answered by investigators, WATSON said he understood his rights and waived them, both verbally and by signing a Miranda warning waiver. WATSON also signed a declination to have the interview video and audio recorded. WATSON stated that he met a mixed-race male that he knows as 'Drew' in the Easton area of Columbus, OH yesterday evening. WATSON stated he entered 'Drew's vehicle in a parking lot and retrieved the drugs from inside. WATSON stated this was the second deal with 'Drew,' and that the drugs were fronted and no money was exchanged him. WATSON stated that the first time he conducted a deal with 'Drew,' he was fronted three pounds of methamphetamine and later paid $1,700 per pound for it. WATSON stated that if the

OSHP had not stopped him, he would've proceeded to Warren, OH, where he lived and would've spend the next month or two selling the methamphetamine to a small amount of customers.

7.  WATSON stated that he utilized 'burner phones' when conducting business with 'Drew.' For the first deal, WATSON stated that he was contacted by a black male he knew as 'Justin' on his personal cellular telephone that 'Drew' was ready to conduct drug business. 'Justin' then provided 'Drew's 'burner phone' to WATSON, who then contacted 'Drew's 'burner phone' on his own 'burner phone.' WATSON stated he used the 'burner phone' to communicate with 'Drew' until the conclusion of the drug transaction, then destroyed the 'burner phone.' WATSON stated he conducted the next deal the same exact way; 'Justin' provided 'Drew's new burner telephone number to WATSON's personal cellular telephone, and WATSON then used a new 'burner phone' to contact 'Drew's 'burner phone' to conduct another drug transaction. WATSON stated that the 'burner phone' for this most recent deal was destroyed shortly before the traffic stop at 1:15 a.m.

## CONCLUSION

8.  Due to the three separate admissions that WATSON made in regards to the 'ice' (methamphetamine) belonging to him (twice when questioned by law enforcement after he was read his Miranda Rights, and once unprompted), along with the fact that WATSON was the driver of the vehicle where both the suspected methamphetamine and fentanyl were located, investigators believe WATSON was responsible for both the methamphetamine and fentanyl. Investigators have field-tested the suspected methamphetamine, and observed a positive field test result. Investigators have field-tested the suspected fentanyl, and observed a positive field test

result. Both the methamphetamine and fentanyl were found together and were packaged in a similar fashion. As a result, investigators believe that the substances that were seized are controlled substances. Finally, due to the large quantity of drugs seized, WATSON's own admission that he purchased the drugs for re-sale in Warren, OH, and that WATSON has a criminal history that consists of a conviction for drug possession, investigators believe that WATSON intended to distribute the drugs that were seized by law enforcement.

9. Based upon my training and experience, along with my review of the evidence gathered by agents and other law enforcement officers assigned to this investigation, there is probable cause to believe that LeBrandon WATSON has violated two counts 21 U.S.C 841(a)(1), that being one count Possession with Intent to Distribute a substance containing a detectible amount of methamphetamine and one count of Possession with Intent to Distribute a substance containing a detectible amount of Fentanyl. This affidavit is in support of a request for the issuance of a Federal complaint and Arrest Warrant for LeBrandon WATSON.

*William Jake VonEssen*

William VonEssen

Special Agent

Drug Enforcement Administration

Subscribed and sworn before me this  20th  day of September, 2023.

*Chelsey M. Vascura*

Honorable Chelsey M. Vascura

United States Magistrate Judge

Southern District of Ohio